Amy J. Oliver (8785)
olivera@sec.gov
Daniel J. Wadley (10358)
wadleyd@sec.gov
Cheryl M. Mori (8887)
moric@sec.gov
Attorneys for Plaintiff
Securities and Exchange Commission
351 South West Temple, Suite 6.100
Salt Lake City, Utah 84101
Tel. 801-524-5796
Fax: 801-524-3558

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>PLAINTIFF,<br><br>v.<br><br>MARQUIS PROPERTIES, LLC, a Utah Limited Liability Company, CHAD DEUCHER, an individual and RICHARD CLATFELTER, an individual,<br><br>DEFENDANTS;<br><br>and<br><br>JESSICA DEUCHER, an individual,<br><br>RELIEF DEFENDANT. | **COMPLAINT**<br><br>Case No.: 2:16-cv-00040-JNP<br><br>Judge Jill N. Parrish |

Plaintiff, Securities and Exchange Commission (the "Commission"), for its Complaint against Defendants Marquis Properties, LLC, Chad Deucher, and Richard Clatfelter (collectively, "Defendants") alleges as follows:

## INTRODUCTION

1. This matter involves an ongoing offering fraud and Ponzi scheme operated by Chad Deucher ("Deucher") and Richard Clatfelter ("Clatfelter") through Marquis Properties, LLC ("Marquis"), an entity they control that is headquartered in Orem, Utah. Since at least March 2010, Deucher and Clatfelter have raised approximately $28 million from over 250 investors in Marquis.

2. Deucher and Clatfelter represent to investors that Marquis offers investments in turnkey real estate properties, promissory notes secured by real properties, and joint venture agreements to purchase real properties. Deucher and Clatfelter represent that Marquis locates, purchases, renovates, and sells single family and small multi-family homes in lucrative areas of the country. Deucher and Clatfelter tell investors that Marquis has proven renovation crews, property managers and realtors on the ground to assist with all stages of the project, eliminating the need for direct involvement.

3. Deucher and Clatfelter represent to investors that they will receive guaranteed return of principal and returns on their investment in the form of rental income, interest payments, and/or profits from the sale of properties.

4. Deucher and Clatfelter represent that investments with Marquis are safe, low-risk, or risk-free because investment proceeds will be secured by a first deed of trust on property wholly owned by Marquis, and that investments will be "over-collateralized."

5. Deucher and Clatfelter omit to disclose to investors, however, that the properties Marquis offers as collateral are not owned by Marquis, are substantially encumbered, and/or are in uninhabitable or blighted condition; that Marquis itself is insolvent and unable to make

2

investor interest and principal payments according to terms of agreements; and that investor returns are being paid from the funds of new investors.

6. Because investors are being repaid from new investor funds, Marquis' operation is a classic Ponzi scheme.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction by authority of Sections 20 and 22 of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. §§ 77t and 77v] and Sections 21 and Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §§ 78u and 78aa].

8. Defendants, directly and indirectly, singly and in concert, have made use of the means and instrumentalities of interstate commerce and the mails in connection with the transactions, acts and courses of business alleged herein, certain of which have occurred within the District of Utah.

9. Venue for this action is proper in the District of Utah under Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and under Section 27 of the Exchange Act [15 U.S.C. § 78aa] because certain of the transactions, acts, practices, and courses of business alleged in this Complaint took place in this district and because certain of the defendants reside in and transact business in this district.

10. Defendants, unless restrained and enjoined by this Court, will continue to engage in the transactions, acts, practices, and courses of business alleged herein and in transactions, acts, practices, and courses of business of similar purport and object.

11. Defendants' conduct took place in connection with the offer, purchase and/or sale of promissory notes and investment contracts issued by Marquis, which are securities.

**DEFENDANTS**

12. **Marquis Properties, LLC** ("Marquis") is a Utah limited liability company organized in April 2010 to engage in real estate activity. Marquis' principal place of business is in Orem, Utah. Marquis is owned and controlled by Deucher.

13. **Chad Deucher**, 42, is the sole and managing member of Marquis and is the President/CEO of Marquis. Deucher resides in Orem, Utah.

14. **Richard Clatfelter**, 42, is the Executive Vice President of Marquis. Clatfelter resides in Phoenix, Arizona.

**RELIEF DEFENDANT**

15. **Jessica Deucher**, 43, is Chad Deucher's wife and received at least $376,300 in payments from Marquis for no apparent consideration. Most or all of this money came from investor funds paid to Marquis. Jessica Deucher resides in Orem, Utah.

**STATEMENT OF FACTS**

**Background**

16. Marquis, through Deucher and Clatfelter, claims to be "a company of experienced property professionals specializing in acquiring, repairing, and managing high quality, cash-flowing properties in several markets across the country." Marquis, through Deucher and Clatfelter, claims that Marquis owns and manages investment properties in desirable investment areas, such as Indiana, Missouri, and Ohio.

17. Marquis, through Deucher and Clatfelter, offers three types of investment options: (1) turnkey cash flow real estate investments; (2) promissory notes purportedly secured by real properties; and (3) purported joint ventures.

18. Marquis, Deucher, and Clatfelter seek investors through direct solicitation, radio advertisements, a website, presentations at real estate and retirement seminars, and by soliciting financial advisors or others to refer their clients to Marquis.

19. Deucher and Clatfelter meet and speak individually with investors and potential investors in-person or by telephone and also communicate with investors and potential investors through the use of e-mail. Deucher and Clatfelter have made and continue to make oral and written misrepresentations and omissions to investors and potential investors to induce them to purchase Marquis securities.

20. Deucher and Clatfelter have provided written sales materials to potential investors and investors. The written sales materials claim:

> Our key focus is Cash Flow Real Estate. Our niche is the location, purchase, and renovation of single family homes and multi-family homes with 4 units or less, (although we do occasionally work with larger unit buildings), that create opportunity for immediate as well as long-term profit potential to both the company and the investors. The properties are sold to investors for either a short-term retail sale or a long-term buy and hold strategy for cash flow or estate planning purposes. In addition we offer select Joint Ventures on projects for the investors who want to be more "hands on" with the process. Finally, we offer Secured Promissory Notes that allow for the "passive" investor to create an above average return for their portfolios through deferral or compounding of their interest or creating an income stream.
>
> Marquis Properties provides mitigated risk and security as a professional intermediary company which sources, analyzes and manages on behalf of its investors. This professional approach to participating in Turnkey Cash Flow Real Estate, Secured Promissory Notes and Joint Venture investments provides peace of mind and freedom to enjoy other pursuits.

## MARQUIS OFFERS AND SELLS SECURITIES

### Turnkey Real Estate Investments

21. Marquis, through Deucher and Clatfelter, offers and sells investments in turnkey real estate. Deucher and Clatfelter claim that Marquis owns or will locate, purchase, renovate,

and manage turnkey investment property with the opportunity for short-term resale, from a few months to a few years and collecting cash flow from rents. Deucher and Clatfelter claim that Marquis will manage the properties, collect the rents, and pay monthly rental income to investors, thereby providing passive investments in real estate. The investments in turnkey real estate are investment contracts.

### Promissory Notes

22. Marquis, through Deucher and Clatfelter, represents that Marquis finances its operations with private short-term loans from individuals in the form of secured promissory notes secured by first deeds of trust on property wholly owned by Marquis. Deucher and Clatfelter claim that investor funds will be used to purchase specific properties and that Marquis will handle all aspects of the transaction.

23. Marquis, through Deucher and Clatfelter, offers and sells the promissory notes, under which Deucher and Clatfelter represent that Marquis will pay a guaranteed fixed annual interest rate of between 8% and 12% or more. The promissory notes carry a term from two months to five years and are to pay full return of principal at the end of the term. Deucher and Clatfelter promise that promissory notes are at least 100% collateralized by specific real properties.

### Joint Ventures

24. Marquis, through Deucher and Clatfelter, offers and sells joint venture agreements, under which Marquis is supposed to purchase a specific property, renovate the property, sell the property at retail value, and split the profits with the joint venture partner. Deucher and Clatfelter have offered and sold purported joint venture agreements that are supposed to be tied to specific properties and secured by a first trust deed with respect to each

property. The joint venture agreements provide that the joint venture partner will receive 50% of the profits from the sale of the property and return of principal at the time of sale.

25. Marquis, through Deucher and Clatfelter, represents that joint venture partners will have participation and involvement in the process and selection of properties. In reality, however, Marquis, Deucher, and/or Clatfelter have made all decisions related to selection and management of subject properties in the joint venture agreements. Joint venture investors have had no participation in management or decision-making for the joint venture and have relied solely on Marquis' efforts to locate and purchase properties, renovate, and sell the properties to earn a profit on their investments. The joint venture agreements are investment contracts.

26. Deucher and Clatfelter sign promissory notes, joint venture agreements, and other investment contracts related to turnkey property investments on behalf of Marquis.

27. The turnkey real estate investments, promissory notes, and joint venture agreements offered by Marquis are securities.

## MISREPRESENTATIONS AND OMISSIONS

28. Marquis, through Deucher and Clatfelter, has made and continues to make material misrepresentations and omissions in the offer and sale of securities and in connection with the purchase or sale of securities. The misrepresentations and omissions relate to the following areas: (1) ownership and value of real properties promised for investment or collateral; (2) safety of the investment; (3) guaranteed profits and return of principal; and (4) use of investor funds.

### Ownership and Value of Real Properties

29. Marquis, through Deucher and Clatfelter, represents that investor funds will be used to purchase specific real properties wholly-owned by Marquis.

7

30. After purchasing securities from Marquis, investors learned that properties specified in their agreements were not owned by Marquis, and/or trust deeds were not provided, as represented. In addition, properties that were provided by Marquis as collateral were not rented or in rentable condition as represented, but were blighted, uninhabitable, and/or encumbered by tax liens and/or other assessments.

### Safety of the Investment

31. Marquis, through Deucher and Clatfelter, assures potential investors that investments with Marquis are safe, low-risk, or risk-free because investment proceeds will be secured by a first deed of trust on property wholly owned by Marquis, and that investments will be "over-collateralized."

32. Many of the properties offered as collateral were not owned by Marquis, were substantially encumbered, and/or were in uninhabitable or blighted condition. Thus, the investments are not safe or low-risk as represented because the value of collateralized properties is often far below the amount invested, or no collateral is actually provided.

33. Marquis, Deucher, and Clatfelter failed to provide first trust deeds on many of the properties offered as collateral for investments.

### Guaranteed Profits and Return of Principal

34. Marquis, through Deucher and Clatfelter, promises monthly rental income for turnkey investment properties. Marquis, through Deucher and Clatfelter, promises monthly interest income at rates ranging from 8% to 12% or more per annum for secured promissory notes and full return of principal upon the end of the term of the note. Marquis, through Deucher and Clatfelter, promises joint venture partners they will receive 50% of sale profits and return of principal upon sale of specified properties.

35. Contrary to their representations, Defendants failed to pay monthly interest and rental payments to turnkey property investors and promissory note investors and failed to pay sale profits to joint venture investors. Defendants also failed to repay principal to many investors, as promised.

## Use of Investor Funds

36. Marquis, through Deucher and Clatfelter, represents that monies invested with Marquis will be used to purchase real properties.

37. Rather than purchasing properties with investor funds, Marquis, through Deucher and Clatfelter, has used investor funds to pay purported returns to earlier investors and for personal expenses. Marquis did not purchase properties with investor funds, contrary to representations by Deucher and Clatfelter.

38. Deucher and Clatfelter are or were owners and have or had signatory authority over Marquis' bank accounts. Deucher and/or Clatfelter controlled Marquis' bank accounts and handled investor funds.

39. From August 5, 2010 to March 30, 2015, Deucher caused Marquis to direct at least $376,300 to Deucher's wife, Jessica Deucher. Most or all of these funds came from investor deposits into Marquis' bank accounts. Jessica Deucher did not perform work for Marquis and has no legitimate claim to those funds.

40. In January 2015, Deucher solicited an investor to invest $92,000 with Marquis to purchase a specific investment property. The next business day, Deucher caused Marquis to direct $84,320 of those investor funds to a title company to fund a mortgage for a personal residence owned by Deucher.

## PONZI PAYMENTS

41. Deucher directed investors to transfer investment funds to Marquis' bank account or to a purported escrow account. Deucher was an owner and signatory for Marquis' bank accounts while investor funds were received, and he controlled the accounts and directed transactions. The purported escrow account was merely a commercial bank account. Deucher controlled all investor funds deposited into the purported escrow account and directed and authorized all transactions involving investor funds.

42. Clatfelter directed investors to transfer investment funds to Marquis' bank account or to the purported escrow account. Clatfelter had access to Marquis' bank accounts from March 13, 2012 and was an owner of at least two Marquis bank accounts from September 2012 through at least July 2014.

43. From April 2010 through November 2013, Marquis received approximately $21.6 million in its bank accounts. Most or all of this amount came from investor funds for the purchase of Marquis securities.

44. From March 2010 to December 2013, Marquis used investor funds to make purported principal and interest payments to earlier investors.

45. From December 2013 through June 2015, Marquis received approximately $6.6 million in funds in its bank accounts. Approximately $6.3 million (95%) of those receipts came from investors for the purchase of Marquis securities.

46. From December 2013 through June 2015, Marquis used approximately $5 million (75%) of investor funds to make purported principal and interest payments to earlier investors.

47. Marquis does not appear to have legitimate business operations. Marquis has had little income, if any, from business operations.

48. Since at least 2013, Marquis would not have been able to survive or make purported principal and interest payments to investors, as promised, without the influx of new investor funds. The only way Marquis has been able to repay earlier investors is by bringing in new investor money.

49. In July 2015, the bank accounts used by Marquis to that date were closed with no balance remaining in the accounts. Defendants are now using accounts at other banks to conduct transactions with investors.

50. Since at least 2015, Marquis has failed to make promised principal and interest or rental payments to many investors. While some investors have received payments, those payments were funded by monies invested by other investors.

51. Since at least 2015, investors have complained to Deucher and Clatfelter about late or missing payments of returns, rents, and/or principal. However, Deucher and Clatfelter urge the investors to be patient and promise that payments will be made soon due to expected income from pending deals.

52. Deucher e-mailed at least one investor as late as January 5, 2016 representing that the investor would be repaid as Deucher is getting things going again and people are moving.

53. Marquis has failed and/or been unable to make payments according to the terms of the investment agreements. In spite of this, Deucher has continued to solicit new investors, while not disclosing that Marquis has failed to make promised payments to current investors.

### Materiality

54. The misrepresentations and omissions detailed above are material to a reasonable investor. Most or all of Marquis investors would not have invested or purchased securities from

11

Marquis if they had known the true nature of the ownership and value of properties, safety of the investment, profits and returns, and use of investor proceeds.

### Scienter

55. Deucher acted with scienter. Deucher has been the owner, managing member, CEO and President of Marquis since its inception. Deucher owned and controlled Marquis' bank accounts and a purported escrow account that received investor funds. Deucher directed all financial and operational aspects of Marquis and handled and directed investor monies. Deucher knew investors were not being repaid as promised and directed that new investor funds received by Marquis be used to pay purported returns to earlier investors. Deucher knew that properties were not owned or purchased by Marquis as promised and failed to provide trust deeds to investors. Deucher knew he used investor funds for personal expenses, including the purchase of a personal residence.

56. Clatfelter acted with scienter. Clatfelter is the Executive Vice President of Marquis and represented himself as such to investors, both orally and in writing. Clatfelter was an owner and signatory on Marquis' bank accounts while soliciting investors, thus he knew or was reckless in not knowing that Marquis used new investor funds to pay returns to earlier investors, rather than for the purchase of properties as promised in agreements with investors. Clatfelter knew or was reckless in not knowing that Marquis did not purchase or own properties promised to investors. Clatfelter knew that investors were not being paid pursuant to the terms of their agreements.

57. Deucher's and Clatfelter's scienter is imputed to Marquis because they are or were officers of Marquis at the time they were soliciting investors.

## UNREGISTERED TRANSACTIONS

58. Marquis' sales materials state that investments with Marquis are for "Qualified Accredited Investors." However, Deucher and Clatfelter did nothing to assure investors were accredited.

59. No registration statement has been filed with the Commission as to any offering of promissory notes or other securities offered by Marquis.

## UNREGISTERED BROKERS OR DEALERS

60. Deucher and Clatfelter are not registered as broker-dealers and are not affiliated with any registered broker-dealer.

61. Deucher and Clatfelter are or were acting as unregistered brokers in connection with the offers and sales of securities in the form of notes and investment contracts by actively soliciting investors, handling investor funds, and by paying commissions to third parties who solicited investors on behalf of Marquis.

62. Deucher and Clatfelter have made transaction-based payments in the form of commissions, bonuses, and/or referral fees to others for referring investors who have purchased Marquis securities.

63. Deucher and Clatfelter have received transaction-based payments from Marquis in the form of commissions and/or bonuses after Marquis completed securities transactions with investors.

## FIRST CAUSE OF ACTION
### FRAUD IN CONNECTION WITH THE PURCHASE AND SALE OF SECURITIES
Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]

64. The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 through 63, above.

65. Defendants, and each of them, by engaging in the conduct described above, directly or indirectly, by the use of means or instrumentalities of interstate commerce or use of the mails, in connection with the purchase or sale of securities, with scienter, (1) employed devices, schemes, or artifices to defraud; (2) made untrue statements of material fact or omitted to state a material fact necessary in order to make statements made, in light of the circumstances under which they were made not misleading; or (3) engaged in acts, practices, or courses of business that operated or would operate as a fraud and deceit upon other persons.

66. By reason of the foregoing, Defendants, and each of them, violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## SECOND CAUSE OF ACTION
### EMPLOYMENT OF A DEVICE, SCHEME OR ARTIFICE TO DEFRAUD
### Violation of Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)]

67. The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 through 63, above.

68. Defendants, and each of them, by engaging in conduct described above, directly or indirectly, in the offer or sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, with scienter, employed devices, schemes, or artifices to defraud.

69. By reason of the foregoing, Defendants, and each of them, directly or indirectly, violated, and unless restrained and enjoined by this Court, will continue to violate, Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

14

## THIRD CAUSE OF ACTION
### FRAUD IN THE OFFER AND SALE OF SECURITIES
### Violations of Section 17(a)(2) and (3) of the Securities Act
### [15 U.S.C. § 77q(a)(2) and (3)]

70. The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 through 63, above.

71. Defendants, and each of them, by engaging in the conduct described above, directly and indirectly, in the offer and sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, obtained money or property by means of untrue statements of material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and engaged in transactions, practices, or courses of business which operate or would operate as a fraud or deceit upon the purchaser.

72. By reason of the foregoing, Defendants, and each of them, directly or indirectly, violated, and unless restrained and enjoined will continue to violate, Section 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)].

## FOURTH CAUSE OF ACTION
### OFFER AND SALE OF UNREGISTERED SECURITIES
### Violation of Sections 5(a) and (c) of the Securities Act [15 U.S.C. § 77e(a) and (c)]

73. The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 through 63, above.

74. Defendants, and each of them, by engaging in the conduct described above, directly or indirectly, through use of the means or instruments of transportation or communication in interstate commerce or the mails, offered to sell or sold securities or, directly or indirectly, or carried

15

such securities through the mails or in interstate commerce, for the purpose of sale or delivery after sale.

75. No registration statement has been filed with the Commission or has been in effect with respect to these securities.

76. By reason of the foregoing, Defendants, directly or indirectly violated, and unless enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

### FIFTH CAUSE OF ACTION
### OFFER AND SALE OF SECURITIES BY AN
### UNREGISTERED BROKER OR DEALER
### Violation of Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)]

77. The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 through 63, above.

78. Defendants Deucher and Clatfelter, directly or indirectly, made use of the mails or the means or instrumentalities of interstate commerce to effect transactions in, or to induce or attempt to induce the purchase and sale of, securities without being registered as a broker or dealer with the Commission or associated with a broker-dealer registered with the Commission.

79. By reason of the foregoing, Defendants Deucher and Clatfelter violated, and unless restrained and enjoined will continue to violate, Section 15(a) of the Exchange Act [15 U.S.C. 78o(a)].

### RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court:

### I

Issue findings of fact and conclusions of law that Defendants committed the violations charged herein.

II

Issue in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure orders that temporarily, preliminarily and permanently enjoin Marquis, Deucher, and Clatfelter and their officers, agents, servants, employees, attorneys, and accountants, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, from engaging in transactions, acts, practices, and courses of business described herein, and from engaging in conduct of similar purport and object in violation of Sections 5(a), 5(c) and 17(a) of the Securities Act, and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

III

Issue in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure orders that temporarily, preliminarily and permanently enjoin Deucher and Clatfelter and their officers, agents, servants, employees, attorneys, and accountants, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, from engaging in transactions, acts, practices, and courses of business described herein, and from engaging in conduct of similar purport and object in violation of Section 15(a) of the Exchange Act.

IV

Issue, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, orders that temporarily, preliminarily and permanently enjoin Defendants, and their officers, agents, servants, employees, attorneys, and accountants, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, from: (A) transferring, changing, wasting, dissipating, converting,

concealing, or otherwise disposing of, in any manner, any funds, assets, claims, or other property or assets owned or controlled by, or in the possession or custody of these Defendants; and (B) transferring, assigning, selling, hypothecating, or otherwise disposing of any assets of Marquis or related entities, including but not limited to those entities identified in accompanying pleadings.

V

Issue in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure orders that temporarily, preliminarily and permanently restrain and enjoin Defendants, and each of them, and their officers, agents, servants, employees, attorneys, and accountants, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, from destroying, mutilating, concealing, transferring, altering, or otherwise disposing of, in any manner, books, records, computer programs, computer files, computer printouts, correspondence, including e-mail, whether stored electronically or in hard copy, memoranda, brochures, or any other documents of any kind that pertain in any manner to the business of Defendants.

VI

Enter an order directing Defendants, and each of them, to pay civil money penalties pursuant to Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act.

VII

Enter an order directing Defendants to disgorge all ill-gotten gains received during the period of violative conduct and pay prejudgment interest on such ill-gotten gains.

VIII

Grant such further equitable relief as this Court deems just, appropriate, and necessary, including, but not limited to, a freeze of assets and the appointment of a receiver.

## IX

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

Dated January 19, 2016.

Respectfully submitted,

/s/Amy J. Oliver
Amy J. Oliver (8785)
olivera@sec.gov
Daniel Wadley (10358)
wadleyd@sec.gov
Cheryl M. Mori (8887)
moric@sec.gov
Attorneys for Plaintiff
Securities and Exchange Commission
351 S. West Temple, Suite 6.100
Salt Lake City, Utah 84101
Tel: 801-524-5796
Fax: 801-524-5262